OPINION
{¶ 1} This is an appeal from a jury determination convicting appellant of guilt as to the charge of aggravated murder and aggravated robbery. The jury determined that the aggravating circumstances as to the death penalty specification did not outweigh the mitigating factors. Following the recommendation of life imprisonment, appellant received such sentence. In addition, he received a consecutive ten year sentence on the aggravated robbery charge.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The facts indicate that appellant went to the home of Gary Stoll in Massillon, Ohio, on October 18, 2001.
 {¶ 3} Stoll was appellant's landlord.
 {¶ 4} Stoll was killed by a knife to the neck which severed his jugular vein.
 {¶ 5} Various items were stolen from Stoll's home.
 {¶ 6} Appellant admitted to several persons that he was involved in such murder and that he had property belonging to Stoll for sale. Some of these conversations were taped after the police became aware of appellant's involvement.
 {¶ 7} Appellant provided various versions of the events when questioned by the police, asserting that Stoll had made sexual advances which resulted in appellant shoving him down the basement steps. He did not make any admission as to the knife.
 {¶ 8} Appellant raises eight Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 9} "I. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN APPELLANT'S MOTION TO SUPPRESS STATEMENTS WHICH WERE NOT FREELY AND VOLUNTARILY GIVEN AND WHICH WERE TAKEN IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL THEREBY VIOLATING APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS.
 {¶ 10} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO SUPPRESS THE ONE-PARTY TAPED CONVESATIONS [SIC] COLLECTED BY THE MASSILLON POLICE DEPARTMENT.
 {¶ 11} "III. THE TRIAL COURT ABUSED ITS DISCRETION AND THE PROSECUTOR COMMMITTED PROSECUTORIAL MISCONDUCT BY PERMITTING THE INTRODUCTION OF TESTIMONY REGARDING A POLYGRAPH EXAMINATION OF JEREMY MCCLELLAN.
 {¶ 12} "IV. APPELLANT WAS DENIED A FAIR TRIAL IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS DUE TO THE INEFFECTIVE REPRESENTATION OF TRIAL COUNSEL.
 {¶ 13} "V. THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING INTO EVIDENCE CRIME SCENE PHOTOGRAPHS WHICH WERE REPETETIVE [SIC], CUMULATIVE, INFLAMMATORY AND UNDULY PREJUDICIAL.
 {¶ 14} "VI. THE VERDICT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND CONTRARY TO LAW.
 {¶ 15} "VII. THE SENTENCING VERDICT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND CONTRARY TO LAW.
 {¶ 16} "VIII. THE CUMULATIVE EFFECT OF ERRORS DURING THE TRIAL RESULTED (SIC) APPELLANT BEING DENIED A FAIR TRIAL."
 I {¶ 17} The first Assignment of Error asserts the Court incorrectly denied Appellant's Motion to Suppress.
 There are three methods of challenging on appeal a trial court=s ruling on a motion to suppress. First, an appellant may challenge the trial court=s findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court=s conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v. Guysinger
(1993), 86 Ohio App.3d 592._
 {¶ 18} Appellant asserts that the taped interviews were conducted after he had invoked his right to counsel. The record of such interviews does not support such statement. Appellant was clearly advised of his Miranda rights prior to each interview and waived such rights.
 {¶ 19} Further, there is no indication in such interviews as to coercion.
 {¶ 20} Also, the self-serving statement that Appellant had been promised that he could go home after the statement was given is admittedly inaccurate as, after Appellant made such statement, he was corrected.
 {¶ 21} On Pages 52-53 of the interview of November 14, 2001, the following exchange took place:
 {¶ 22} "SCHAAR: I'm sayin' you guys told me before (sic) we ever started restart, that why I didn't want to say nothin' you guy told me before we even started it was gonna be up to you if I could leave or not.
 {¶ 23} "GRIZZARD: And it is left up to us okay, it is left up to what information you provided to us.
 {¶ 24} "SCHAAR: Well, I just asked you about it
 {¶ 25} "GRIZZARD: Well, we just, at no time did any of us lie to you okay, and I told you from the very beginning that we weren't gonna lie to you is that correct? Yes or no?
 {¶ 26} "SCHAAR: Yes.
 {¶ 27} "GRIZZARD: Okay, and no one said that Jamie your goin' home.
 {¶ 28} "SCHAAR: I know you didn't."
 {¶ 29} In addition, while the actual cause of death was the knife wound, Appellant stated that after he pushed the victim down the steps and snapped his neck to make sure he was dead. To believe that he would be released from custody after such admission stretches credulity.
 {¶ 30} There are significant differences between the ruling by this Court in State v. Taylor (1992), 80 Ohio App.3d 601 and the case sub judice.
 {¶ 31} In Taylor, supra, an attorney had been appointed. After the appointment, a detective interviewed him at the jail without identifying himself as such and Taylor testified that he thought such detective was his court-appointed lawyer.
 {¶ 32} Here, no attorney had been appointed. Appellant again was provided and waived his rights, including the right to counsel
 {¶ 33} After an independent review of the facts supporting the court's ruling on Appellant's Motion to Suppress, we must determine that such ruling was correct. The First Assignment of Error is rejected.
 II {¶ 34} The second Assignment of Error asserts an abuse of discretion.
 {¶ 35} In order to find an abuse of discretion, we must determine the trial court's decisions were unreasonable, arbitrary or unconscionable and not merely errors of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 36} As to the Second Assignment, we fail to agree with Appellant that these consent conversations involve the Detective as an "integral part of each such conversation nor that R.C. 2933.52 has been violated as such statute contemplates the involvement of law enforcement officers in consent telephonic conversations:
 {¶ 37} "Revised Code 2933.52(B)(3) A law enforcement officer who intercepts a wire, oral, or electronic communication, if the officer is a party to the communication or if one of the parties to the communication has given prior consent to the interception by the officer."
 {¶ 38} While the "integral part" argument is novel, no law in support has been provided.
 {¶ 39} The second Assignment of Error is overruled.
 III {¶ 40} The third Assignment asserts prosecutorial misconduct and abuse of discretion by the court.
 {¶ 41} The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990),51 Ohio St.3d 160, cert. denied 112 L.Ed.2d 596; State v. Smith (1984),14 Ohio St.3d 13.
 {¶ 42} This assignment references a comment by Jeremy McClellan, a State witness, in a non-responsive answer to a question on direct examination (Vol. 8, p. 129):
 {¶ 43} "Q. Now, they came back to see you again later, a few months later and asked for some physical evidence from you, didn't they?
 {¶ 44} "A. Ah, they — at first was the polygraph test.
 {¶ 45} No curative instructions were requested or given sua sponte by the court.
 {¶ 46} While we cannot assume, as Appellant does, that this unrequested comment had a prejudicial effect upon the jury, the polygraph comment was clearly inadmissible.
 {¶ 47} However, it is also clear that the Prosecutor did not solicit this response. Therefore, the assertion of misconduct is misplaced.
 {¶ 48} The requirements for admission of any evidence as to a polygraph examination are, as the State acknowledges, set forth by the Ohio Supreme Court in State v. Souel (1978), 53 Ohio St.2d 123:
 {¶ 49} "The results of a polygraphic examination are admissible in evidence in a criminal trial for purposes of corroboration or impeachment, provided that the following conditions are observed:
 {¶ 50} "(1) The prosecuting attorney, defendant and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.
 {¶ 51} "(2) Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.
 {¶ 52} "(3) If the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:
 {¶ 53} "(a) the examiner's qualifications and training;
 {¶ 54} "(b) the conditions under which the test was administered;
 {¶ 55} "(c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and,
 {¶ 56} "(d) at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.
 {¶ 57} " (4) If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given."
 {¶ 58} We agree with Appellant that a curative instruction was applicable and that plain error occurred by its absence.
 {¶ 59} We must then review the doctrine of plain error as it applies to the case sub judice.
 {¶ 60} The Ohio Supreme Court discussed the doctrine of plain error in its application to a jury instruction in State v. Cooperrider
(1983), 4 Ohio St.3d 226. While a different error was asserted in such case than that present herein, the concept is the same.
 {¶ 61} The Court stated: ". . . an erroneous jury instruction "does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, 97. Additionally, the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice."
 {¶ 62} We must then look beyond the absence of a curative instruction to such spontaneous statement of such witness to determine if the outcome of the trial would have been different. Based upon the evidence presented and the statements of Appellant, we find that the trial result was unaffected.
 {¶ 63} Appellant's third Assignment of Error is overruled.
 IV {¶ 64} In his fourth Assignment, Appellant claims that he was denied effective assistance of counsel. We disagree.
 {¶ 65} A claim of ineffective assistance of counsel requires a two prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838,122 L.Ed.2d 180; Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 66} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel=s performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 67} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel=s unprofessional errors, the result of the proceeding would have been different. Bradley, supra, at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. It is with this framework in mind that we address the instances of alleged ineffectiveness of counsel raised by appellant in the instant case.
 {¶ 68} We agree with Appellant that hearsay statements were admitted without objection. Further, we are unwilling to accept Appellee's contention that such statements were not offered to show the truth of the contents thereof. However, it is unnecessary to determine if the failure to object constituted ineffective representation as sufficient evidence was offered, particularly through Appellant's own statements of involvement as referenced under the prior Assignments of Error, to negate any prejudicial effect thereof.
 {¶ 69} We agree that the statement from Strickland v. Washington
(1984), 466 U.S. 668 as cited by Appellee in its brief appropriately applies:
 {¶ 70} "Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result."
 {¶ 71} Therefore, the fourth Assignment of Error is rejected.
 V {¶ 72} The fifth Assignment of Error asserts abuse of discretion as to the admission of several photographs of the crime scene.
 {¶ 73} The factors required by a trial court are whether the probative value in admission is outweighed by the prejudicial effect.
 {¶ 74} Normally, Evidence Rules 403 and 611(A) would express the guiding principles and sound discretion of the trial court would control. State v. Sage (1987), 31 Ohio St.3d 173. However, as this was a capital case, the Supreme Court in State v. Maurer (1984),15 Ohio St.3d 239, held:
 {¶ 75} "Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number."
 {¶ 76} After examining the photographic exhibits offered by the State, we find that such photographs countered Appellant's statements relative to his version of the events surrounding Stoll's death.
 {¶ 77} While all photographs of this nature can be prejudicial, we find that their probative value outweighed such potential prejudicial effect.
 {¶ 78} Appellant's fifth Assignment Error is denied.
VI and VII
 {¶ 79} The sixth and seventh Assignments allege that the verdict was against the manifest weight and sufficiency of the evidence and was contrary to law and will be discussed simultaneously.
 {¶ 80} In reviewing the records to the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. Statev. Martin (1983), 20 Ohio App.3d 172. See, also, State v. Thompkins
(1997), 78 Ohio St.3d 380. The discretionary power to grant a new trial "should be exercised only in the exceptional case in which the evidence weights heavily against the conviction." Martin at 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230. Contrary to reviewing the facts from the record, sufficiency of the evidence is a question of law. State v.Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 81} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. The weight to be given evidence and the determination of credibility of witnesses are issues for the jury, not for the reviewing court. State v.Jamison (1990), 49 Ohio St.3d 182, certiorari denied, 498 U.S. 881.
 {¶ 82} Based upon the record, we find that sufficient evidence under the law and the manifest weight supported both of the verdicts and that the four assertions listed on page 31 of Appellant's Brief are meritless as the record clearly shows that adequate evidence was produced particularly through Appellant's statements.
 {¶ 83} As to the fourth of such assertions, to-wit:
 {¶ 84} "That the Appellant had formed the intent to commit an aggravated robbery before the murder and thus failed to show that the Appellant caused the death of Gary Stoll while attempting, committing or fleeing after attempting or committing the robbery."
 {¶ 85} As in all cases of theft and murder, a claim could be made that the intent to steal was not coupled with the death, the jury must consider from the conduct and admissions of Appellant the intent of Appellant from the combined factors of the death and robbery.
 {¶ 86} Appellant's sixth and seventh Assignments of Error are denied.
 VIII {¶ 87} The eight Assignment states that the cumulative effect of errors denied a fair trial to appellant. We disagree.
 {¶ 88} This assertion relies on State v. DeMarco (1987),31 Ohio St.3d 191, which held:
 {¶ 89} "Significant parts of testimony by claims adjustor, auditor, and detective regarding insurance fraud investigation and investigation of theft of automobile as to which false insurance claims were allegedly filed involved technical violations of hearsay rule, without balancing demonstration of trustworthy or reliability, and cumulative effect of hearsay testimony was prejudicial; witnesses testified about many events for which they did not have firsthand reliability. Rules of Evid., Rule 801(C)."
 {¶ 90} We must disagree with this conclusion as we have rejected each of the prior seven assignments of error and, after examining them and the basis of each in combination, we fail to find that the concerns of DeMarco, supra, are applicable.
 {¶ 91} Appellant's eighth Assignment of Error is denied.
 {¶ 92} This cause is affirmed at Appellant's costs.
By: Boggins, J., Gwin, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs assessed to appellant.